## Jacob Bloomstein *v.* Manson M. Brien and others.

### October Term, 1875.

TAX SALES UNDER 1873, 118—MODE OF SELLING MANDATORY.—Under the act of 1873, 118, 65, each lot or parcel of land sold for taxes must be offered publicly to that bidder who will pay the taxes for the least quantity of the land, "to be run off from the beginning corner, and running with at least one line of the tract;" and if the certificate of sale, which the statute requires the collector to make to the Circuit Court, to be entered of record and form the basis of a judgment and writs of possession, shows upon its face that the sale was not made in this mode, the sale is void.

SAME—DAY OF SALE.—The sale is also void if the certificate fail to show on what day the particular sale was made.

SAME—WRIT OF POSSESSION.—The act contemplates the suing out of a writ of possession within the year, and a writ subsequently issued is void.

SAME—RELIEF.—The complainant, having come into equity, must, upon being restored to the property, reimburse the defendant the taxes, costs, and penalties paid at the sale or subsequently, with six per cent interest, and pay all of the costs of the cause.

*Ed. Baxter*, for complainant.
*M. M. Brien*, for self.

THE CHANCELLOR : — This is one of a number of bills filed to enjoin the execution of writs of possession, issued by the Circuit Court of Davidson County, to put the defendants Brien and Thaxton in possession of lands of the several complainants, as the purchasers of said lands at tax sales. This case was heard upon the demurrer of the defendants, while other cases have come before me upon pleadings and proof. They all, however, turn upon questions of law, the facts admitted by the demurrer being established by the evidence in the other cases.

The facts are that the real estate in this county was assessed for taxes for the year 1873, under the act of the General Assembly of March 25, 1873, ch. 118, and the tax-books placed in the hands of the tax-collectors. By section 61 of that act it is made the duty of the tax-collector, where taxes remain due and unpaid on the first day of June in the year following the year for which the taxes are due, to make out a complete list of all unpaid taxes on real estate, add twelve per cent penalty, and, by publication in some newspaper printed in the county, advertise said property for sale. The form of this advertisement and the mode of publication are prescribed ; and by section 64 it is provided that the sale shall be made at the court-house door, on the first Monday of July of the year succeeding the year for which the taxes are due, and the next ensuing days, until the sale is completed. By section 63 it is directed that " each and every lot, tract, or parcel of assessed real estate, and the buildings and improvements thereon, on which the taxes, penalties, and costs are not paid before the day of sale, shall be sold, or so much thereof as shall be sufficient to satisfy the taxes, penalties, and costs due thereon." By section 65 it is provided " that no tract, lot, or parcel of land shall be sold for less than the amount of taxes, penalties, and costs due thereon ; and *that* bidder shall be the purchaser who will pay the amount due for the least quantity of said lot, tract, or parcel of land, to be run

off from the beginning corner, and running with at least one line of the tract."

The tax-collector is by section 67 authorized, upon receipt of the amount due, to give the purchaser a certificate of his purchase. Section 68 is as follows: "That when said sales shall have been completed, and within thirty days after the first Monday of July of said year, the tax-collector shall certify all of said sales to the Circuit Court of his county."
\* \* \* "Said court, if in session, or, if not in session, then at the next term, shall enter said sales of record as valid judgments, vesting title to the property so sold in the purchasers thereof; and writs of possession shall in all cases be granted to the purchasers during said term, or at any time on demand, whether said purchasers shall be any person, company, firm, or corporation, or the treasurer of the state."

Section 69 is: "That no sale shall be invalid because the number of acres, or the size and dimensions, of any tract, lot, or parcel of land have not been precisely named, or the amount of the valuation or tax not precisely given ; nor because the property has been assessed and advertised in the name of a person who did not own the same, nor because the same was assessed and advertised to unknown owners, nor because a distress warrant did not issue, nor on account of any objection or informality merely technical ; but all such sales shall be good and valid if the taxes, penalties, and costs were actually due and unpaid, and the advertisement, sale, and *certificate of sale to the Circuit Court shall have been made as provided for in this act.*"

Section 70 is: "That in each and every case of sale of real estate under this act, where a writ of possession has been issued, it shall be the duty of the sheriff to put the purchaser or purchasers thereof, his, her, or their agent or attorney, in possession of the same, with full power and authority of use and occupation of the same, and the enjoyment of all rents and profits arising therefrom, and the

right to sell any crops belonging to the owners, growing thereon, and to cut, remove, or sell timber from said land, until a full and complete redemption of the same by the owner or owners, his, her, or their agent and attorney, has been effected, if within the time prescribed in the succeeding section of this act."

This succeeding section — 71 — is in these words : " That the owner or owners of any real estate sold at said sale, his, her, or their agent or attorney, shall be entitled and allowed to redeem the same and recover possession thereof at any time within one year from the day of sale, but at no time thereafter ; and, to effect such redemption, shall pay, or cause to be paid, to the clerk of said court the amount of taxes, penalty, and costs, with interest on the same, at the rate of fifty per cent per annum, from the day of sale, on the payment of which a judgment of redemption shall be entered of record in the court ; and if the purchasers thereof shall refuse possession to said owner, a writ of possession shall be issued, and the sheriff shall place the party in possession."

Section 72 is : " That, in all cases of redemption, the purchaser shall have the right to elect whether he will accept the redemption-money paid to said clerk or retain the rents and profits arising from the use and occupation of said property up to the time of said redemption ; said purchaser shall abide by his said election, and signify said choice and election to the clerk of the court. If he elects to retain the moneys already in his hands, the clerk of the court shall refund to the person paying the same the redemption-money so paid in ; but should he elect to take the redemption-money, he shall render an accurate account of his receipts and disbursements from and concerning said property during his occupancy thereof, and pay the balance in his hands to the clerk of the court, to be paid to the owner of said property, and receive the redemption-money."

These provisions have been copied at large in order to

show that the Legislature did not intend the certificate of sale to the Circuit Court to be a useless form, but had in view in such return an important object. That object was to make the certificate, when of record, the basis upon which the rights of the parties were to rest, and through which the possession of the property could be controlled judicially, in accordance with the rights of the parties. And these sections manifestly contemplate the writs of possession *pro* and *con* to be issued and executed within the year after sale.

On July 11, 1874, the sales in controversy in these cases were certified to the Circuit Court, then sitting. The certificate commences with the collector's advertisement of sale, followed by the list of delinquents, and property on which the taxes are unpaid, and the taxes, with the name of the purchaser added at the end. The principal objection raised by these bills to this list is that there is no dollar or other mark to fix the denomination of the figures in the various columns. Then follows a certificate by the tax-collector that he received the tax-books from the county-court clerk on November 7, 1873; that he gave at once public notice in each civil district that they were in his hands, and that he would attend and receive taxes at a place designated; that he did attend, and at the expiration of ninety days issued distress warrants, which were returned *nulla bona;* that in all of the above-named cases mentioned in his list the taxes remained due and unpaid on June 1, 1874; that he therefore made out said list, adding the penalty, and by publication in the *Union and American,* a newspaper published in Nashville, Davidson County, in which the property lies, he advertised the same for sale, once a week for three consecutive weeks previous to the day of sale, to wit, the first Monday of July, 1874; and at the court-house door, on that and the ensuing days, offered for sale " each lot, tract, or parcel of assessed real estate, as above stated and set forth, separately and successively, and sold each piece, or the smallest amount thereof sufficient to satisfy the taxes,

penalties, and costs due thereon; and the parties named above as purchasers were the bidders who agreed to pay the taxes, penalties, and costs for the smallest amount of the land, as before fully stated and set forth."

Upon this certificate, signed by the collector, the court undertakes to recite that it appeared to its satisfaction that the taxes, costs, and penalties for which the property in the certificate described was sold "were due and unpaid at the time of said sale, *and are still due and unpaid;*" that all of the property sold is situated in Davidson County; that the advertisement and sale of said property, and the certificate and report thereof to this court, are correct, and in every respect pursuant to the requirement of the act of the Legislature, approved March 25, 1873; and ordered that the "certificate and report of said sale" be confirmed; that a judgment be entered thereupon "against the respective property therein described as sold as aforesaid, and against the owners thereof; and that the title thereto be divested out of the aforesaid delinquent tax-payers and owners thereof, and vested in said respective purchasers thereof as in said report and certificate named, subject to redemption for twelve months from the *date of said sale* aforesaid; and that writs of possession issue to the sheriff of Davidson County, Tennessee, who will put the aforesaid purchasers of said property in the possession thereof to the extent of their several purchases, as hereinbefore reported and described, at any time, upon the application of the said purchaser or purchasers, or his or their agents or attorneys."

The defendants Brien and Thaxton, who became the purchasers of the several parcels of realty in controversy, waited until the expiration of a year from the first Monday of July, 1874, and then demanded and obtained writs of possession under the above order, and these bills were thereupon filed to prevent the execution of the writs by injunction, and injunction was granted accordingly.

The first position assumed in argument by the defendants

Brien and Thaxton is that the suing out of the injunction was a release of errors in the proceedings of the Circuit Court, under the Code, sec. 3107, by which a judgment by confession, or the suing out of an injunction against a judgment at law, is made a release of errors. But this section only releases such errors as might be reached by appeal to a higher court, and the suing out of the injunction would be a good plea in bar to a revision in the appellate court. *Henly* v. *Robertson*, 4 Yerg. 172. The object of the act was to prevent a party, after having elected to go into equity for relief against a judgment, from renewing the litigation at law. It was never intended to deprive the party of his remedy in equity. The act does not apply unless there is a judgment at law to be enjoined, and, of course, has no application where there is no judgment, either because the supposed judgment is void, or for any other reason.

Another position assumed by the learned counsel for the defendants is that a tender to the purchaser, of his bid, damages, interest, cost, and other taxes, is a prerequisite to the right of action by the original owner, under the fifty-ninth section of the act of March 25, 1873, and that such a tender is a recognition of the purchaser's title and a waiver of errors. These positions seem to be somewhat antagonistical. For it can scarcely be seriously contended that a person cannot sue unless he make a tender, and if he make a tender it extinguishes his right to sue. The meaning of section 59, when read in connection with the sections already quoted, plainly is that, when the purchaser has been put in possession under the writ issued from the Circuit Court, the owner shall not be entitled to an action to recover possession until he has offered to reimburse the purchaser. The latter has paid the taxes, damages, and costs, and ought, in any event, to have the opportunity of surrendering possession upon being reimbursed his outlays before suit. Such a tender is not a prerequisite to an action

to prevent the purchaser from gaining possession. Nor, if made, will it have any effect upon the right of action. It is only offering to do in advance what equity will compel such party to do if he appeal to its active interposition.

Another point made in some of these cases is that the purchaser's right under the tax sale does not depend upon the certificate to the Circuit Court, and the action of the court thereon; that the title of the purchaser becomes perfect upon the sale, and the certificate which the collector is authorized to give to him, under section 67. The return which the collector is required to make to the court is likened to the return of the sheriff on an execution, which, as we know, will not affect the rights of a purchaser under the execution. *Mitchell* v. *Lipe*, 8 Yerg. 180; *Rogers* v. *Cawood*, 1 Swan, 148. This may be true, but the title acquired by such sale and the collector's certificate will not put the purchaser in possession of the land. If he stands upon that title, his only remedy to get possession is by action of ejectment at law, as any other purchaser at execution sale. The writ of possession in litigation, under which he is trying to obtain possession of the land in controversy, is issued by the Circuit Court, and can only be sustained by the proceedings in that court. The only question in the case before this court is whether the defendants are entitled to possession under that writ.

In this view, the parol testimony as to what took place on the day of sale, and preliminary to the sale, and the certified copy of the collector's certificate, as it remains in the office of the clerk of the Circuit Court, cannot be looked to. The latter is only the evidence on which the record of the Circuit Court may be based, but in summary proceedings it is the record, and not the evidence on which it is founded, which determines their validity. The certified certificate and the certificate embodied in the entry on the minutes of the Circuit Court are, however, identical, except that the former contains the dollar and cent marks at the head of

the columns of taxes, penalties, etc., which are wanting in the latter.

The obvious intent of the Legislature in the act under consideration was to secure the collection of taxes, and, first by the addition of penalties, and then by public sales, and lastly by writs of possession, to force every tax-payer to bear his share of the common burden of government. In order to accomplish this end, that body has seen proper to do away with some of the safeguards thrown about the tax-payers, and to expressly provide that certain of the usual defects heretofore relied on to avoid such sales, which are enumerated in section 69, shall not invalidate, and that no objection or informality merely technical shall invalidate tax sales. The propriety and wisdom of these provisions belong exclusively to the Legislature. The duty of the courts is to conform to the legislative will, unless some provision of the Constitution has been infringed. This court, so long as I have the honor to preside in it, will always be found ready to aid in securing the prompt and uniform collection of taxes, which are essential to the life of the state, while it will carefully adhere to those essential requisites, either in form or substance, which the Legislature itself, or judicial wisdom, have established for the protection of the citizen.

It was laid down at an early day, by the highest court of this state, that in tax sales, and summary proceedings generally, the facts which give jurisdiction must appear upon the face of the proceedings; otherwise, the proceedings are not merely voidable, but absolutely void. *Francis* v. *Washburn*, 5 Hayw. (Tenn.) 294, cited with approval by the Supreme Court of the United States, in *Thatcher* v. *Powell*, 6 Wheat. 119. This is, as we all know, the settled law of this state, by a uniform and lengthy current of decisions.

So, too, it was declared by the Circuit Court of the United States, in this state, in a case turning upon a tax title under the act of Congress of 1798, ch. 92, imposing a direct tax

on lands, and subjecting them to sale for such tax without any proceeding whatever in court, that whoever claims title under a summary proceeding must show that all the requisites prescribed to guard against fraud and imposition have been complied with. *Rule's Lessee* v. *Parker*, Cooke, 365. The decision in this case was affirmed, on appeal, by the Supreme Court of the United States, in *Parker* v. *Rule's Lessee*, 9 Cranch, 64, Marshall, C. J., delivering the opinion. "It is admitted," said that eminent judge, "that if the preliminary requisites of the law have not been complied with, the collector could have no authority to sell, and the conveyance can pass no title." Whether, therefore, the proceedings in the case now before us are judicial or not, the rule upon which their validity must be tested is precisely the same.

The Legislature, while declaring, in section 69 of the act of 1873, that certain defects shall not invalidate the sale, undertake, in the same section, to declare what shall be essential. "But," they say, "all such sales shall be good and valid if the taxes, penalties, and costs were actually due and unpaid, and *the advertisement, sale, and certificate of sale to the Circuit Court shall have been made* as provided for in this act." The advertisement, sale, and certificate of sale to the Circuit Court are, therefore, essential prerequisites to the validity of the purchaser's title. Each of these is attacked for some one or more supposed defects; most of them, it must be admitted, "on account of an objection or informality merely technical."

The direction of section 63 is that each lot "shall be sold, or so much thereof as shall be sufficient to satisfy the taxes, penalties, and costs due thereon." And, says section 65, "*that* bidder shall be the purchaser who will pay the amount due for the least quantity of said lot, tract, or parcel of land, to be run off from the beginning corner, and running with at least one line of the tract." Here is a positive provision that only so much of each tract shall be

sold as will be sufficient to satisfy the tax debt, and the mode is designated in which this least quantity shall be ascertained. The provision is clearly intended for the protection of the citizen, to prevent a sacrifice of his property, and is mandatory, not directory. *French* v. *Edwards*, 13 Wall. 506. It must be shown that the sale was made in substantial compliance with this provision, or it will be void.

The certificate of the collector, as embodied in the entry upon the minutes of the Circuit Court, can alone be looked to in determining this question. For the certificate thus entered of record is, as we have seen, made an essential prerequisite by section 69, and is the only evidence upon which the writ of possession in controversy rests. In that return the collector certifies that he offered for sale " each lot, tract, or parcel of assessed real estate as above stated and set forth, separately and successively, and sold each piece, or the smallest amount thereof sufficient to satisfy the taxes, penalties, and costs due thereon, and the parties named above as purchasers were the bidders who agreed to pay the taxes, penalties, and costs for the smallest amount of the land, as before fully stated and set forth."

In substance, the certificate is that he offered each lot, separately and successively, and sold each piece, or the smallest amount, etc. When we look to the list " fully set forth " above, we find the whole lot sold in every instance. He therefore offered each lot, and sold it as a whole. He does not say that he offered less than the whole at any time. At most, we may infer that he offered the whole lot, saying, at the same time, " that the person who would pay the taxes for the smallest amount should be declared the purchaser of that amount." It distinctly negatives the idea that he offered to sell the least quantity of the lot, " to be run off from the beginning corner, and running with at least one line of the tract."

If we go outside of the record and look to the deposi-

tion of the collector, we find that he deposes that when he put up the lot he would say, " Who will pay the taxes, penalties, and costs on this property for the smallest part of it?" saying nothing about corners, or the mode of laying it off, and would then sell the whole.

The record and the deposition make out substantially the same state of facts, namely, that the whole lot was put up, and the question was propounded, " Will any one pay the taxes for the smallest part of this property?" and, upon no one bidding, the whole was, in every instance, knocked off. The offer to accept a bid of the taxes for the smallest part of a lot, if it meant any thing definite, must have been an offer to sell an undivided part of the lot for the taxes, — that is, one-half, one-fourth, one-tenth, as the case might be. The persons present could understand it in no other way. But the law does not contemplate the sale of an undivided interest, which would make the purchaser a tenant in common with the original owner; nor the giving the purchaser an election to take which half, fourth, or tenth he chooses. *Hodge* v. *Wilson*, 12 Smed. & M. 498. The statute intends a sale in severalty of a definite part of each lot, " to be run off from the beginning corner, and running with at least one line of the tract." And the offer should have been so made in each instance. For this omission the sales are void.

The statute directs the sale to be made on the first Monday in July, " and the next ensuing days." The collector certifies that he sold on the first Monday in July, " and the next ensuing days." The certificate does not show on which of these days the tract in controversy was sold, nor how long the sales continued. This is a fatal oversight. For the statute authorizes the owners to redeem within twelve months from the date of the sale, and, if the date of sale does not appear, this valuable right may be lost.

Sections 70, 71, and 72 provide, it will be remembered, for the putting the purchasers into possession of the land

bought, and for the redemption of the land within twelve months from the day of sale, but not thereafter, and the relative rights of the parties in case of redemption, and the restoration of possession by writ from the Circuit Court. These sections manifestly contemplate that the purchaser will take immediate possession, before the expiration of the year for redemption, and to this end the certificate is to be recorded at the sitting or first term of court after sale, and writs of possession are to be granted during the said term. The whole tenor and spirit of all these provisions of the act are that the writs of possession on both sides, and the relative rights of the parties, are to be adjusted within a limited period. The wisdom of such limitation is obvious. The owner of the property, who may be a non-resident, or, if a citizen, may be compelled to rely upon an agent to attend to the payment of his taxes, is put upon his guard within the time of redemption. The purchaser, if the property be redeemed, is compensated by the rights conferred upon him while in possession, or by the interest at the rate of fifty per cent per annum. To suppose that the Legislature intended to allow the purchaser to sleep upon his rights until the time of redemption had run out, and then have his writ of possession, cannot be entertained, unless they have said so in so many words. The language of section 68 is unguarded, and has probably misled the defendants. It says that writs of possession shall, in all cases, " be granted to the purchasers during said term (when the certificate is entered of record), or at any time on demand." These latter words have probably the meaning of similar words in section 3013 of the Code, authorizing execution "on demand ;" and are, at most, merely an emphatic repetition of the idea intended to be conveyed by the first clause. The Legislature means that, notwithstanding the general law of this state, that final process shall not issue during the term without special cause shown, and order to that effect, nor be demandable as of right until the expiration of a fixed period after the close

of the term, yet, in this class of cases, owing to the peculiar circumstances, and the necessity of prompt action, we intend that it shall issue at once upon demand. Any other construction would bring this clause of the act in direct conflict with the scope, spirit, and letter of the residue of the act, and especially sections 70, 71, and 72. I am clearly of opinion that the language of section 68, when read by the light of the whole act, was simply intended to give the party a right to demand the writ *instanter* during the term, or at any time before the period allowed by law for the issuance of other executions after the expiration of the term. Code, 3002 *et seq.*

In this view, the writ of possession under the act is only an execution or writ of *habere facias possessionem*, to carry into effect the sale entered of record. Such a writ, we know, could only be sued out within a year and a day after signing judgment without *scire facias*. It requires a statute to change this rule of the common law. *Hess* v. *Sims*, 1 Yerg. 143. Tidd's Pr. 994, 1244. We have such a statute for judgments and decrees proper. Code, sec. 2987. We have no statute for the revival by *scire facias* of such a proceeding as the one under consideration. It is doubtful whether a *scire facias* would lie at all upon such a record as this; but that question is not before me. Upon this ground, the writs of possession sued out by the defendants are void.

The demurrer in this and other like cases must be overruled. The complainants in the causes heard on their merits are entitled to a decree annulling the sales in controversy, and making the injunctions heretofore granted perpetual.

But the complainants, having come into this court asking its active interposition in their behalf, must do equity. The defendants have paid the taxes, costs, and penalties incurred by the neglect of the complainants to pay the taxes for 1873, which, so far as the record shows, were lawfully assessed. The defendants are entitled to be reimbursed

for these expenditures, and such other taxes as they may have since paid on the property, with six per .cent interest on these several sums from the date of payment, and to a lien on the property for the total amount, when ascertained, and to an account. The complainants will also be required to pay all costs.

NOTE. — The Legislature, by the subsequent act of 1875, 80, 1, forbid the issuance of the writ of possession for two years from the sale, — a change in the law by no means for the better. At the April term; 1878, at Jackson, in *The Bank of Kentucky* v. *Gay*, 1 Memph. L. J. 311, the Supreme Court reached the conclusions embodied in the first and last of the head-notes to this case.